UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EDSON GARDNER,<br><br>       Plaintiff,<br><br>v.<br><br>WENDI LONG, in her official capacity as Treasurer for Uintah County, Utah,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES**<br><br>Civil Action No. 2:18-cv-00509-RJS<br><br>Chief Judge Robert J. Shelby |
| WENDI LONG,<br><br>       Counterclaim Plaintiff,<br><br>v.<br><br>EDSON GARDNER,<br><br>       Counterclaim Defendant. | |

      This matter concerns Plaintiff Edson Gardner's suit to enjoin Defendant Wendi Long, in her official capacity as Uintah Country Treasurer, from assessing taxes on certain real property Gardner alleges is held in trust by the Unites States for his benefit.[1] Following this court's entry of judgment in her favor,[2] Long moved for an award of attorneys' fees.[3] Long's Motion is fully briefed, and for the reasons explained below, the Motion is GRANTED.

---

[1] *See* Dkt. 94, *Amended Complaint* ¶ 1.

[2] Dkt. 188, *Judgment in a Civil Case*.

[3] Dkt. 189, *Motion for Attorneys' Fees*.

1

## BACKGROUND AND PROCEDURAL HISTORY

Gardner initiated this action on June 26, 2018, challenging Uintah County's authority over him and his real property and seeking an injunction preventing the County from foreclosing on his property for failure to pay taxes.[4] Gardner alleged he owns real property that is "in Indian Country" and is "federal trust land" exempt from state property taxes.[5] Long moved to dismiss Gardner's Complaint for failure to state a claim.[6] The court granted Long's Motion and dismissed Gardner's Complaint, without prejudice, finding he had not pleaded "sufficient facts to plausibly support his claim that his land is federal trust land which is exempt from state property taxes."[7]

On May 8, 2020, Gardner filed his Amended Complaint seeking to enjoin Long, in her official capacity as Uintah County Treasurer, from assessing taxes on real property that Gardner alleges is "Indian trust land[]" held by the United States for his benefit.[8] Long answered Gardner's Amended Complaint and asserted counterclaims for civil conspiracy, abuse of process, and bad faith, all premised on the instant lawsuit being a sham which Gardner initiated to prevent Long from carrying out her official duties of foreclosing on the tax liens against him.[9] Gardner moved to Dismiss Long's counterclaims, arguing (1) they were barred by Gardner's

---

[4] *See* Dkt. 2, *Complaint* ¶ 1.

[5] *Id.* ¶¶ 6–11.

[6] Dkt. 12, *Motion to Dismiss*.

[7] Dkt. 58, *Order Adopting Report and Recommendation and Denying Motion to Intervene* at 7; *see also* Dkt. 37, *Report and Recommendation*.

[8] Dkt. 94 ¶ 1.

[9] Dkt. 96, *Answer and Counterclaim* ¶¶ 16–31.

Uinta Indian sovereign immunity,[10] (2) they were precluded by *Alabama v. PCI Gaming Authority*,[11] and (3) Long failed to join the United States as a necessary party.[12] The court denied Gardner's Motion to Dismiss, finding Gardner had "not met his burden of persuasion that tribal sovereign immunity applies to him,"[13] case law cited by Gardner did not control because it was "nonbinding authority about a distinguished issue," and "the United States [was] not an indispensable party."[14]

On May 15, 2021, the deadline for filing dispositive motions passed without either party making such a motion.[15] On June 28, 2021, the court ordered the parties to file a request for a scheduling conference for the purpose of setting a trial date.[16] Long filed her Request, in which she also represented that Gardner had "never served any initial disclosures" and had "engaged in no discovery."[17] On July 22, 2021, the court ordered Gardner to show cause why the case should not be dismissed for his failure to serve initial disclosures.[18] Gardner did not substantively respond to the court's Order to Show Cause.[19] Accordingly, on August 11, 2021, the court dismissed Gardner's Amended Complaint with prejudice.[20] On September 16, 2021, following

---

[10] Dkt. 102, *Motion to Dismiss* at 1.

[11] *Id.* at 7–8 (citing *Alabama v. PCI Gaming Authority*, 15 F.Supp.3d 1161, 1181 (M.D. Ala. 2014)).

[12] *Id.* at 5.

[13] Dkt. 117, *Order Overruling Objection to Report and Recommendation* at 9; *see also* Dkt. 112, *Report and Recommendation*.

[14] Dkt. 112 at 2.

[15] *See* Dkt. 165, *Docket Text Order*.

[16] *Id.*

[17] Dkt. 166, *Request for Scheduling Conference*.

[18] Dkt. 170, *Order to Show Cause*.

[19] *See* Dkt. 176, *Order Dismissing Plaintiff's Amended Complaint with Prejudice* at 2.

[20] *Id.*

Long's consent to the dismissal of her counterclaims,[21] Judgment was entered in her favor[22] and the case terminated.[23]

Now before the court is Long's Motion for Attorneys' Fees.[24] The Motion is fully briefed and, for the reasons described herein, is GRANTED.

## LEGAL STANDARD

Gardner proceeds pro se. Pro se litigants are held to less stringent standards than parties formally represented by lawyers,[25] and their filings are "to be liberally construed."[26] A litigant's pro se status, however, "does not excuse the obligation . . . to comply with the fundamental requirements of the Federal Rules of Civil . . . Procedure."[27] Further, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."[28]

Long seeks an award of attorneys' fees pursuant to the court's inherent authority to assess such fees when a party acts "in bad faith, vexatiously, wantonly, and for oppressive reasons."[29]

Under the "bedrock principle known as the 'American Rule,'" "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[30] Under the

---

[21] Dkt. 187, *Minute Entry for Proceedings on September 16, 2021*.

[22] Dkt. 188.

[23] *See* Dkt. 187 (directing the Clerk of Court to close the case).

[24] Dkt. 189.

[25] *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

[26] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

[27] *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

[28] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[29] Dkt. 189 at 5 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991); *Rogler v. Standard Ins. Co.*, 30 F. App'x 909, 914 (10th Cir. 2002)).

[30] *Kornfeld v. Kornfeld*, 393 F. App'x 575, 578 (10th Cir. 2010) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 243 (2010)).

"bad faith" exception to the American Rule, a court may permit the assessment of fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[31] This exception "reaches a court's inherent power to police itself and serves the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy."[32] "A party acts in bad faith only when the claim brought is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons."[33] The bad faith exception is construed narrowly and "resorted to only in exceptional cases . . . when there is clear evidence that challenged actions [were] taken" in bad faith.[34]

If the court decides to grant a request for attorneys' fees, it must then verify the amount of fees to award. To determine the amount of fees to award, courts employ the lodestar method wherein the fees awarded equal "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[35] The lodestar calculation may generally be presumed to represent a reasonable fee award and provides a useful starting point from which the court determines its final fee award.[36]

A party seeking an award of attorneys' fees should submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which

---

[31] *Id.* (citing *Chambers*, 501 U.S. at 45–46).

[32] *Id.* (internal quotation marks and citations omitted).

[33] *Sterling Energy, Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984) (internal quotation marks and citation omitted).

[34] *Fed. Deposit Ins. Corp. v. Schuchmann*, 319 F.3d 1247, 1250 (10th Cir. 2003) (internal quotation marks and citation omitted).

[35] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[36] *Id.*

compensation is requested and how those hours were allotted to specific tasks."[37]  "Where the documentation of hours is inadequate, the [] court may reduce the award accordingly."[38]  The court is also instructed to exclude hours that were not "reasonably expended," for example "hours that are excessive, redundant, or otherwise unnecessary."[39]  From that point, a court may also adjust the fee award up or down based on the degree of success obtained by the prevailing party.[40]

A reasonable hourly rate is based on the "prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[41]  Here, Gardner does not contest the reasonableness of Long's counsel's hourly rate. He does dispute the request for attorneys' fees itself and the reasonableness of the number of hours expended.[42]

## ANALYSIS

### I. Award of Attorneys' Fees

Long moves for an award of her attorneys' fees pursuant to the common law "bad faith" exception to the American Rule.[43]  Long argues this suit is just the latest chapter in Gardner's long history of bringing "frivolous and/or merit[]less claims, and [abusing] the judicial system"

---

[37] *Case v. Unified Sch. Dist. No. 233, Johnson Cnty. Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998); *see also Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.").

[38] *Hensley*, 461 U.S. at 433.

[39] *Id.* at 434.

[40] *Id.* at 434–36.

[41] *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Case*, 157 F.3d at 1256.

[42] *See* Dkt. 198, *Plaintiff's Objection to Defendant's Motion for Attorneys' Fees*.

[43] Dkt. 189 at 5.

with his "bad faith, vexatious, wanton, and/or [] dilatory filings."⁴⁴  Furthermore, Long asserts Gardner's pro se status should not afford him safe harbor from an award of attorneys' fees because Gardner routinely avails himself of the judicial machinery and has previously been warned and sanctioned for his repeat meritless claims regarding his purported Indian status.⁴⁵  In response, Gardner argues that his claims were not so meritless as to justify an award of attorneys' fees under the "bad faith" exception.⁴⁶  Gardner reiterates his allegations that he is a "recognized Uinta Indian" and "the beneficial owner of the Allotment" held in trust by the Unites States and considered "Indian Country" for which "the United States has [] sole and exclusive jurisdiction."⁴⁷

     Gardner's Indian status has been the subject of litigation brought by him before this court and others dating back nearly thirty years.  In 1994, the Tenth Circuit determined Gardner is the descendent of mixed-blood Utes subject to the jurisdiction of the State of Utah,⁴⁸ and his asserted membership in the "Uinta Indian tribe" confers no Indian status recognized by the United States.  Since then, "[l]itigation regarding Gardner's Indian status [has been] a road well-traveled."⁴⁹  Because Gardner is not a member of a federally recognized tribe and has already

---

⁴⁴ *Id.* at 7–8.

⁴⁵ *See id.* at 2–4, 6–7.

⁴⁶ *See* Dkt. 198 at 1–3.  Gardner also argues that Long is not entitled to an award of attorneys' fees pursuant to Supreme Court precedent holding that the Patent and Trademark Office may not recoup its lawyers' or paralegals' pro rata salaries as "expenses" in civil actions to obtain a patent under 35 U.S.C. § 145.  *Id.* at 3–5 (citing *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365 (2019)).  Because the instant matter is not an intellectual property action brought to obtain a patent this argument is neither relevant nor persuasive.

⁴⁷ *Id.* at 1–3.

⁴⁸ *Gardner v. United States*, 25 F.3d 1056 (10th Cir. 1994) (unpublished table decision).

⁴⁹ *Gardner v. Wilkins*, 535 F. App'x 767, 767 (10th Cir. 2013); *see also, e.g., Gardner v. Wilkins*, 593 F. App'x 800 (10th Cir. 2014); *Gardner v. Ute Tribal Court*, 36 F. App'x 927 (10th Cir. 2002).

been determined to be subject to the jurisdiction of the State of Utah,[50] his contrary claims in this matter are without merit.[51]

Not only were Gardner's claims entirely without color, the history of proceedings in this matter demonstrate they were brought and pursued for purposes of harassment or to delay Long in exercising her official duties of assessing taxes on Gardner's real property. This matter is replete with Gardner's filings seeking various forms of injunctive relief,[52] seeking recusal,[53] and objecting to the assigned Magistrate Judges' reports and recommendations.[54] Gardner's repeated filings resulted in this court ordering him to seek leave prior to filing any additional motions.[55] But despite his numerous filings in this matter, Gardner did little to substantively advance his claims. He never filed initial disclosures and failed to respond to the court's Order to Show Cause, resulting in dismissal of the Amended Complaint.[56] Gardner's zealous filings, contrasted with his failure to participate in discovery or respond to the court's Order to Show Cause, evidences an interest in delay or harassment rather than a sincere effort toward resolution.

"Gardner's pro se status does not immunize him[]" from an award of attorneys' fees.[57] "[P]ro se litigants are subject to the same minimum litigation requirements that bind all litigants

---

[50] *See Gardner*, 535 F. App'x at 767–68.

[51] *See* Dkt. 94 ¶¶ 1–2.

[52] *See, e.g.,* Dkts. 5, 29, 67, 106, 131, 135, 147, 177.

[53] *See, e.g.,* Dkts. 161, 162.

[54] *See, e.g.,* Dkts. 40, 41, 42, 43, 45, 78, 115, 116.

[55] Dkt. 48, *Order Requiring Leave to File* at 2 ("[T]he court ORDERS that Gardner shall not file any more motions in this case without first filing a motion for leave to file. In his motion for leave to file, Gardner must notify the court of what he intends to file, and how the filing differs in substance from earlier filings.").

[56] *See* Dkt. 176.

[57] *Gardner*, 593 F. App'x at 802.

and counsel before all federal courts."[58] Not only is "Gardner's Indian status [] a road well-traveled,"[59] he has previously attempted to challenge Uintah County's authority to tax, regulate, or enforce its laws against him.[60] He has previously been warned that his assertions are without merit and has been sanctioned for his repeated attempts to litigate his Indian status and purported immunity from state or local law.[61] Gardner nevertheless initiated this action and pursued its litigation in a manner suggesting his primary interest was delaying or avoiding Uintah County's enforcement of property taxes against him, rather than a genuine resolution on the merits.[62] Because Gardner's claims were wholly without merit, and appear to have been brought for a deleterious purpose, the court sees fit to award Long's attorneys' fees pursuant to the bad faith exception.

## II. Amount of Attorneys' Fees

Lastly, Gardner objects to the amount of fees requested by Long and asserts that "[r]oughly half of the billing submitted by [] Long [] relates to [] claims and appeals for which [] Long ultimately did not prevail on the sovereign immunity issue."[63] With her Motion, Long submitted her counsel's billing records showing the attorneys involved, tasks performed, time required, and billing rate for a total of $27,820.00 in requested attorneys' fees.[64] Long also notes that the fees requested exclude time spent in relation to the prosecution or defense of Long's

---

[58] *Kyler v. Everson*, 442 F.3d 1251, 1253 (10th Cir. 2006).

[59] *Gardner*, 535 F. App'x at 767.

[60] *See Gardner*, 593 F. App'x at 801.

[61] *See id* at 801–02 (discussing related litigation history brought by Gardner).

[62] *See supra* notes 52–54 and accompanying text.

[63] Dkt. 198 at 6.

[64] Dkt. 189-2, *Counsel Billing Records*.

counterclaims.[65]

On review of counsel's billing records, the court finds Long has provided sufficient documentation of the hours allotted to different tasks related to this litigation.[66] Furthermore, the time documented is not "excessive, redundant, or otherwise unnecessary."[67] However, the court notes that numerous time entries relate not to litigation before this court, but rather to work related to appellate proceedings before the Tenth Circuit.[68] Appellate attorneys' fees may be awarded by circuit court order, upon a party's motion, pursuant to Federal Rule of Appellate Procedure 54(d)(2).[69] This court is aware of no such order awarding appellate attorneys' fees in this matter. As such, the court will reduce Long's award of attorneys' fees to subtract that time related to appeals before the Tenth Circuit. The court will accordingly award Long $26,225.00[70] in attorneys' fees.

## CONCLUSION

Long's Motion is GRANTED. She is awarded $26,225.00 in attorneys' fees.

DATED this 7th day of July, 2022.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[65] *See* Dkt. 189-1, *Affidavit of Jesse C. Trent in Support of Motion for Attorneys' Fees* at 4; Dkt 189 at 5.

[66] *See Case*, 157 F.3d at 1250.

[67] *Hensley*, 461 U.S. at 434.

[68] *See* Dkt. 189-2 at 71, 74, 78, 81–82, 89, 91–92. Entries related to work pertaining to appeals in this matter, before the Tenth Circuit, total $1,595.00. *See id.*

[69] Fed. R. App. P. 54(d)(2).

[70] $26,225.00 = $ 27,820.00 (fees requested) – $1,595.00 (appellate fees).